UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

LISAROSE POTTS,                                                    **Docket No:**

                                        Plaintiff,

            -against-                                              **COMPLAINT**

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF
ANTHONY J. LaROCCO, in his individual and official
capacities, CORRECTIONS OFFICER JOHN BARBER, in
his individual and official capacities, and CORRECTIONS
OFFICER JOHN DOES #1-10 (fictitiously named), in their
individual and official capacities,                               **PLAINTIFF DEMANDS A**
                                                                  **TRIAL BY JURY**

                                        Defendants.
------------------------------------------------------------------------ X

        Plaintiff, LISAROSE POTTS, by her attorneys, HORN WRIGHT, LLP, complaining of

Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO,

in his individual and official capacities, CORRECTIONS OFFICER JOHN BARBER, in his

individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10

(fictitiously named), in their individual and official capacities (collectively, "Defendants"),

respectfully alleges as follows:

## PRELIMINARY STATEMENT

        1.      This is an action to recover damages by Plaintiff LISAROSE POTTS against

Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO,

in his individual and official capacities, CORRECTIONS OFFICER JOHN BARBER, in his

individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10

(fictitiously named), in their individual and official capacities for physical, mental, and financial

injuries she suffered as a result of the actions and/or omissions of Defendants, committing acts

1

under color of law and depriving Plaintiff of rights secured under 42 U.S.C. § 1983, 18 U.S.C. § 2721, *et seq.*, and the Fourth Amendment to the Constitution of the United States.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, 18 U.S.C. § 2721, *et seq.*, and the Fourth Amendment of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983, 18 U.S.C. § 2721, *et seq.*, and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

3.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of the individually named Defendants and Doe Officers is within the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York.

## PARTIES

4.      Plaintiff LISAROSE POTTS ("POTTS" and/or "Plaintiff") is a resident of the State of New York, who resides within the County of Nassau.

5.      Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

6.      Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, owned, operated, maintained, possessed, supervised, and controlled the Nassau County Sheriff's Department ("NCSD"), including the Nassau County Correctional Center ("NCCC") and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for all persons present there.

7.    At all relevant times herein, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO ("LaROCCO") was and is the Sheriff of the County of Nassau, acting under color of state law, and is responsible for providing a safe and secure environment for individuals, including detainees in NCCC's custody and visiting persons. Defendant LaROCCO is responsible for the day-to-day operations of NCCC, and is being sued in his individual and official capacities. As Sheriff, he has the custody, control, and charge of the NCCC, as well as its Corrections Officers and inmates. LaROCCO is legally responsible, in whole or in part, for the operation of the NCCC, for the conditions therein, and the health and safety of persons present there.

8.    Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER JOHN BARBER ("BARBER") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, BARBER was acting under color of state law within the scope of his employment as a Corrections Officer employed by Defendant COUNTY, and works under the supervision, direction, and/or control of the supervisors in the NCSD, NCCC, and La ROCCO.

9.    Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named) ("DOES") are individuals and employees of COUNTY with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual and official capacities. At all relevant times described herein, DOES were acting under color of state law and within the scope of their employment as Corrections Officers and/or Supervisors employed by Defendant COUNTY, and work under the supervision, direction, and/or control of their supervisors in the NCSD, NCCC, and LaROCCO. They are legally responsible, in whole or in part, for the operation of the NCCC,

for the conditions therein, and the health and safety of persons confined or incarcerated therein and/or any persons upon the premises of NCCC.

## FACTUAL ALLEGATIONS

10. Upon information and belief, at all relevant times described herein, Defendants COUNTY and LaROCCO maintained supervisory and oversight functions for Corrections Officer placements, assignments, and clearances, including the ability to access the personal information of visitors.

11. Upon information and belief, at all relevant times described herein, Defendants COUNTY and LaROCCO had the ability and authority to remove and/or reassign Corrections Officers from particular placements, restrict their ability to access certain information, and investigate issues or complaints arising from their conduct.

12. At all relevant times described herein, Defendants COUNTY and LaROCCO maintained procedures governing visitation with detainees at NCCC, including scheduling the visits, and requiring visitors to disclose personal information and present proper identification at the time of the visit.

13. At all relevant times described herein, potential visitors to NCCC were required to schedule an appointment and disclose their names, addresses, phone numbers, and relation to the detainee, prior to the visit.

14. Visitors provide their personal information solely for visitation scheduling purposes, with the understanding that it will remain confidential, and not shared or used outside the scope for which it was provided.

15. Upon information and belief, at all relevant times described herein, Defendants had access to, maintained, and acted as custodians of said information.

16.     Upon information and belief, at all relevant times described herein, Defendants held themselves out as responsible recordkeepers and custodians, who would keep the information confidential, and solely use the personal information to schedule a visit.

17.     Upon information and belief, at all relevant times described herein, Defendants COUNTY, LaROCCO, and DOES were responsible for supervising Corrections Officers that could access the personal information of visitors, the database in which it was stored, as well as controlling the purpose for which such information could be used.

18.     Visitors, including Plaintiff, maintained a legitimate expectation of privacy in providing her information.

19.     On September 26, 2024, Plaintiff had a scheduled visit with a detainee at NCCC and, thus, had been required to provide her name, address, and phone number, with the understanding that said information would remain confidential, secure, and solely used for purposes pertaining to the visit.

20.     Upon information and belief, at all relevant times described herein, Corrections Officers, such as Defendants BARBER and DOES (collectively, "Defendant COs"), had the ability to access visitor information, even after the visit had begun and the visitor's identity had been confirmed.

21.     While acting as custodians of Plaintiff's personal information, COUNTY and LaROCCO permitted Plaintiff's information to be accessed by Defendant COs for purposes beyond the limited scope for which it was provided. Plaintiff did not consent to Defendants accessing or distributing her information for any purpose other than identification at the onset of the visit.

22.     BARBER accessed Plaintiff's information in order to contact her from his personal

cellphone. BARBER's conduct was willful, wanton, and in reckless disregard of Plaintiff's rights and expectation of privacy.

23. In permitting BARBER to access Plaintiff's personal information outside the limited scope for which Plaintiff had provided it, Defendants violated Plaintiff's reasonable expectation of privacy.

24. At the conclusion of the September 26, 2024 visit, Plaintiff was approached by BARBER, who claimed he needed to discuss important information with her, and directed her to meet him during his break.

25. Believing that this pertained to her visit and/or possible information concerning her fiancé, Plaintiff obliged.

26. BARBER told Plaintiff to meet him in the parking lot of a bar/restaurant in East Meadow known as the Green Turtle Sports Bar ("Green Turtle").

27. Upon arriving at Green Turtle, BARBER claimed he could not be seen inside the bar and stated he and Plaintiff should speak in his car, which was parked in the far corner of the parking lot. Plaintiff warily obliged.

28. Once inside the vehicle, BARBER proceeded to speak to Plaintiff as if he was well acquainted with Plaintiff's fiancé, even falsely claiming to have known him for over twenty years.

29. Suddenly and without warning, BARBER attempted to kiss Plaintiff on the lips.

30. Plaintiff quickly turned her head to avoid him and sought to move away, but was unable to, as she was confined within BARBER's vehicle.

31. Plaintiff, feeling trapped and fearful for her safety, attempted to redirect the conversation to a different subject, before she was finally able to exit the vehicle.

32. Immediately thereafter, BARBER instructed Plaintiff not to mention what had just

transpired to her fiancé.

33.     Plaintiff was afraid of retaliation by BARBER, and terrified of what BARBER would do to her or her fiancé.

34.     At no point had Plaintiff agreed to, or granted permission for, her phone number to be accessed for any purposes other than scheduling a visit.

35.     Plaintiff ultimately discovered that any Corrections Officer could access a visitor's personal information, including their name, address, and phone number, for purposes outside the function of identification for a visit.

36.     Plaintiff feared for her safety due to BARBER's repeated and unwanted advances.

37.     Plaintiff also feared for the safety of her fiancé, whom she was visiting.

38.     Plaintiff's fear was further heightened by BARBER's knowledge of her personal information, including her phone number and home and work addresses, and his ability to access her information at will.

39.     Plaintiff reasonably feared BARBER would escalate this behavior into monitoring, following, or stalking, causing significant emotional distress.

40.     In the days that followed, Plaintiff was contacted by Nassau County Internal Affairs regarding the above incidents with BARBER.

41.     Plaintiff subsequently learned that BARBER's conduct was part of a pattern of behavior where he used the visitor's system to gain access to the personal information of female visitors.

42.     Defendants COUNTY and LaROCCO were well aware of BARBER's conduct as, upon information and belief, BARBER had exhibited similar conduct toward female visitors and/or female detainees in the past.

43.   Defendants COUNTY and LaROCCO were well aware of BARBER's ongoing conduct, as other visitors had also been contacted by Nassau County Internal Affairs.

44.   Despite this knowledge, COUNTY and LaROCCO failed to take any action.

45.   Defendants owed Plaintiff a duty to exercise reasonable care in ensuring her information remained confidential and solely used within its limited intended scope – to schedule a visit with a detainee at NCCC.

46.   At all times herein, Defendants COUNTY and LaROCCO breached their duty of reasonable care by failing to adequately secure Plaintiff's information.

47.   Defendants COUNTY and LaROCCO knew or should have known, based upon BARBER's previous conduct and clear pattern of behavior, that the lack of security measures and/or restrictions on his ability to access visitor information posed a foreseeable risk of harm to visitors.

48.   Defendants COUNTY and LaROCCO's inadequate supervision of Defendant COs was a substantial factor in BARBER's ability to access Plaintiff's information.

49.   Upon information and belief, at all relevant times described herein, Defendants COUNTY and LaROCCO were responsible for exercising reasonable care in securing Plaintiff's information, including taking reasonable steps to ensure the information was only accessed for its narrowly intended purpose.

50.   At all times herein, Defendants COUNTY and LaROCCO breached their duty of reasonable care by failing to implement and enforce reasonable supervisory and restrictive measures designed to ensure confidentiality and prevent improper use and/or access.

51.   As a result of the incident, Plaintiff has suffered severe emotional and mental distress, anxiety, and fears of possible retaliation towards herself and/or her fiancé, an inmate

presently detained at the NCCC.

## COUNT I
### 42 U.S.C. § 1983 – Unlawful Search and Seizure
#### (*Against Defendants BARBER and DOES*)

52.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

53.     On or about September 26, 2024, Plaintiff was subjected to unlawful searches and seizures by Defendants, deprived of her freedom, subjected to harassment, stalking, and fear, and her personal information improperly used and accessed by Defendants in violation of the civil and Constitutional rights afforded to her via the Fourth Amendment of the United States Constitution, as well as 42 U.S.C. § 1983. All acts by Defendants were committed under color of law, thus depriving Plaintiff of rights secured by federal law and the United States Constitution.

54.     On or about September 26, 2024, Defendants unlawfully seized and searched Plaintiff, thus depriving her of her freedom and violating her civil rights. Said searches and seizures were made without probable cause.

55.     Such searches and seizures were ordered, directed, and carried out by Defendants, all of whom actively instigated and encouraged the violation of Plaintiff's rights.

56.     Furthermore, as a direct result of said actions, Plaintiff was unjustly exposed to stalking, harassment, and fear.

57.     Defendants individually and collectively knew at the time of Plaintiff's unlawful searches and seizures, and at all times since then, that there was no reasonable and lawful basis to support Defendants' actions.

58.     Defendants knew or should have known that they were violating federal law and

9

Plaintiff's Constitutional rights set forth herein and had failed to prevent same and, therefore, acted in concert to harm Plaintiff.

59.    Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of Defendants, separately and in concert, acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her right to freedom from illegal search and seizure of her personal property, person, and effects – all rights that are secured to Plaintiff by the Fourth Amendment of the United States Constitution, and by 42 U.S.C. § 1983.

60.    As a direct and proximate result of the aforesaid acts of Defendants, Plaintiff suffered great mental anguish and violation of rights from then until now and she will continue to so suffer in the future having been placed in substantial fear and mentally injured, as a result of the foregoing acts of Defendants.

61.    As a result of said baseless false and unlawful search and seizure and abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, frustration, and other expenses incurred.

62.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff was stalked, placed in fear of her life, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees pursuant to Title 42 § 1988.

### COUNT II
### 18 U.S.C. § 2721, *et seq.* – Violations of the Driver's Protection Privacy Act
### (*Against All Defendants*)

63.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all

other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

64.    The Driver's Privacy Protection Act, 18 U.S.C. § 2721(a), *et seq.* ("DPPA") prohibits a person or organization from knowingly obtaining, disclosing, or using personal information contained in motor vehicle records for any purpose not specifically permitted under 18 U.S.C. § 2721(b).

65.    Defendants violated and continue to violate 18 U.S.C. § 2721, *et seq.* by intentionally obtaining, using, re-disclosing, and/or impermissibly using Plaintiff's motor vehicle records without knowledge, consent, or authorization for purposes not specifically permitted under the DPPA.

66.    Plaintiff is an individual within the meaning of 18 U.S.C. § 2725(2).

67.    The name, address, telephone number, and other information that Defendants obtained from motor vehicle records pertains to Plaintiff's "personal information" as defined under 18 U.S.C. § 2725(3).

68.    The contents of Plaintiff's records obtained by Defendants constitute a "motor vehicle record," because they contain records that "pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," within the meaning of 18 U.S.C. § 2725(1).

69.    Defendants were not authorized recipients under 18 U.S.C. § 2721(c).

70.    Defendants knowingly used the personal information they obtained from the DMV motor vehicle records to stalk and harass Plaintiff.

71.    Defendants did not obtain express consent from Plaintiff to obtain her personal information from the DMV or use her information for this purpose.

72.     As a direct and proximate result of the aforesaid acts and activities of Defendants, Plaintiff has sustained harm including, but not necessarily limited to, intrusions upon her seclusion, invasions of her privacy, stalking, harassment, and fear for her safety.

73.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was stalked, placed in fear of her life, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees pursuant to Title 42 § 1988.

### COUNT III
### *Monell*
### (*Against Defendants COUNTY and LaROCCO*)

74.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise and Failure to Train**

75.     Defendants COUNTY and LaROCCO were responsible for supervising, overseeing, and controlling their respective subordinates, including Defendant COs.

76.     Defendants COUNTY and LaROCCO had an express and/or implied duty to provide a reasonably safe environment for visitors, including Plaintiff. At a minimum, they had a duty to ensure the confidentiality and security of Plaintiff's personal information.

77.     Despite having knowledge of BARBER's past instances of misconduct, COUNTY and LaROCCO failed to take any remedial measures to prevent the aforementioned violations of Plaintiff's rights.

78.    The countenancing of this behavior created an environment within the NCCC wherein employees and members, such as Defendant COs, were allowed to continue with their behavior, which has led to the rights of individuals, such as Plaintiff, being violated.

79.    Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor their employees and members who had a history of engaging in official misconduct, and failed to implement measures to prevent their employees and members from conspiring with each other to cover up their official misconduct.

80.    Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor Defendant COs from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the rights of individuals, including Plaintiff.

81.    Defendants COUNTY and LaROCCO negligently hired, retained, and/or supervised Defendant COs, when they knew or should have known that they posed a threat to individuals.

82.    Defendants COUNTY and LaROCCO knew or should have known of Defendant COs' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

83.    At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

84.    Defendants COUNTY and LaROCCO were aware there was a substantial likelihood that granting Defendant COs the ability to access visitor information at any time would deprive individuals of their rights but failed to take adequate measures to resolve or remedy the wrong.

85.    Defendants COUNTY and LaROCCO's failure and refusal to adequately investigate Defendant COs' actions, acquiescence in their conduct, failure to take any remedial action against them, allowing them to remain employed as Corrections Officers, gross negligence in their supervision of them, and deliberate indifference to the rights of others by failing to act on information that rights were being violated, subjects Defendants COUNTY and LaROCCO to supervisory liability for the violations perpetrated against Plaintiff.

86.    At all times herein relevant, Defendants COUNTY and LaROCCO screened, hired, and/or assigned those Corrections Officers to particular placements and job duties.

87.    At all times herein relevant, Defendants COUNTY and LaROCCO were responsible for exercising reasonable care in hiring and retaining employees of NCCC, including Defendant COs.

88.    Defendants COUNTY and LaROCCO breached their duty of reasonable care in hiring and retaining Defendant COs by failing to take reasonable steps to ensure that Defendant COs were fit to be in positions where they would have unfettered access to the confidential information of visitors.

89.    As a direct and proximate result of Defendants COUNTY and LaROCCO's negligent hiring and/or intentional and willful conduct, Plaintiff suffered injuries and damages including, but not limited to, emotional distress, anxiety, and psychological and/or psychiatric care, and has suffered and will continue to suffer loss of enjoyment of life.

90.    That, by reason of the foregoing, Plaintiff was caused to be placed in substantial fear for her life, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and

psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorneys' fees.

**Custom, Policy, and Practice**

91.     It was the custom, policy, and practice of Defendants COUNTY and LaROCCO to tolerate, condone, and encourage violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by their employees and members.

92.     Employees and members of COUNTY and LaROCCO, such as Defendant COs, were aware at all times alleged in this Complaint that their conduct would not be investigated or questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

93.     Failing to supervise, train, and reprimand such employees caused the injuries to Plaintiff through the actions and inactions of Defendants.

94.     By maintaining a *de facto* policy of automatic indemnification, Defendants COUNTY and LaROCCO caused the injuries to Plaintiff through the actions and inactions of Defendants.

95.     It was the custom, policy, and practice of Defendants COUNTY and LaROCCO to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield the NCCC from receiving any bad press that would be generated from an investigation of misconduct.

96.     This custom, policy, and practice of Defendants COUNTY and LaROCCO to ignore complaints and/or widespread mistreatment and other malfeasance created an environment

15

where foreseeable violations by their employees and members were rampant, including the violations of Plaintiff's rights.

97.    Defendants COUNTY and LaROCCO's failure to take action against their employees and members, such as Defendant COs, was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

98.    As authorized representatives of Defendants COUNTY and LaROCCO, Defendant COs' conduct constituted a custom, policy, and practice which renders Defendants COUNTY and LaROCCO liable to Plaintiff as a "Person" acting under the color of state law.

99.    That, by virtue of Defendants COUNTY and LaROCCO's failure and refusal to adequately investigate Defendant COs' actions, acquiescence in Defendant COs' conduct, failure to take any remedial action against Defendant COs, allowing Defendant COs to remain employed, gross negligence in their supervision of Defendant COs, and deliberate indifference to the rights of others by failing to act on information that rights were being violated by Defendant COs, Defendants COUNTY and LaROCCO exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

100.    As a proximate result of Defendants COUNTY and LaROCCO's customs, policies, and practices for creating an environment that tolerates, encourages, and condones such Constitutional violations, Plaintiff was caused to be placed in substantial fear for her life, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and

counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE

MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

## JURY DEMAND

101.    Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff LISAROSE POTTS respectfully requests judgment against

Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO,

in his individual and official capacities, CORRECTIONS OFFICER JOHN BARBER, in his

individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10

(fictitiously named), in their individual and official capacities as follows:

A.    Under the First Count, in the amount of ONE MILLION DOLLARS

($1,000,000.00), plus punitive damages and attorney's fees;

B.    Under the Second Count, in the amount of ONE MILLION DOLLARS

($1,000,000.00), plus punitive damages and attorney's fees;

C.    Under the Third Count, in the amount of ONE MILLION DOLLARS

($1,000,000.00), plus attorney's fees;

D.    Costs and disbursements of this action; and

E.    Such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        April 22, 2026

Respectfully Submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By:    /s/ *Sheetal Paul*
       Sheetal Paul, Esq.
       400 Garden City Plaza, Suite 500
       Garden City, New York 11530

17

Tel: 516.355.9696
shp@hornwright.com